Go ahead. May it please the court. Hannah Comstock on behalf of the petitioner Mr. Lopez-Marroquin. I want to just jump right in. I'm going to be discussing the aggravated felony issue. Yeah you have a jump off spot so go for it. So just to kind of pick up where the prior argument left off, Judge Callahan and Judge Wynn, I think that y'all touched the precise issue before this court is that Duenas Alvarez did not conduct the divisibility inquiry that Mathis requires and in fact Duenas Alvarez used a divisibility approach that was explicitly rejected in Mathis and for that reason Duenas Alvarez is clearly irreconcilable with Mathis and that triggers this court's gammy authority to overrule a prior panel opinion. And Judge Thomas didn't do it when he had they didn't do it when they had the chance so the concurrence doesn't really they don't really address that issue. He said it would be good for the court to look at that at some point but we don't know if he meant it would be good to go on bonk. We don't know but I wasn't in conference and Judge Wynn would be sworn to secrecy as to what they might have talked about so we don't know. That's correct your honor but the fact that Judge Thomas took he wrote a concurrence on the in addition to the majority opinion which he also authored to outline precisely why these two cases are clearly irreconcilable is extremely telling about you know where this court is right now and and why it's imperative for this court to act and overrule Duenas Alvarez at this point. Judge Thomas's concurrence was clear that that Mathis altered the legal landscape and that when we apply the Mathis factors Duenas Alvarez can no longer stand. Okay I'm going to at least tension but push me beyond tension. I was going to ask something this a question along the same lines I think it can be argued given Chief Judge Thomas's concurrence that there's definite tension there that at some point the circuit ought to think about going on bonk to correct but it wasn't necessarily irreconcilable so there's an argument to be made there given uh how that opinion and concurrence was structured how would you respond to that? Your honors it is far more than attention when we look at exactly what Duenas Alvarez did and exactly what Mathis requires now. Duenas Alvarez again relied solely on the destructive phrasing and when we look at the Mathis factors it tells courts to look at first how state case law has treated the statute and state courts have said that it creates elements or means as to the destructively phrased terms and then you go to the statutory text on its face and under that element Mathis was clear destructive phrasing does not necessarily mean that the statute creates elements. I have trouble though with Vidal in terms of that Vidal plainly says one who is convicted as an accessory after the fact of theft cannot have said to have committed elements of a generic theft and then also accessory liability arises only after a completed crime therefore as a logical matter under 10-851 how can an accessory after the fact be said to have stolen the car with the intent to deprive the owner of possession so that's where I I can't I'm I'm that's making my head spin. I understand your honor and when we look at 10851 and its legislative history and where exactly it sits in the California vehicle theft. If you want to be really straight you have to call it 10-851. 10-851 when we look at 10-851 and where it sits in in the way that California has created vehicle theft statutes the California legislature really intended for the statute to kind of collapse into 10-851 and grand theft and so the California legislature and courts have interpreted this statute and you know how the California legislator wanted it to which is that it is very loose and that really all it requires is that somebody be in a car that is not their own and the way that a particular factual scenario can arise is to satisfy. 10-851 requires an intent Joy writing is different. Well so joy writing has since been collapsed into 10851 misdemeanor joy writing so it is encompassed within 10851 and when we look at the statutory language of 10851 it is riddled with destructive phrasing and California courts have been quite clear that no particular you know a prosecutor doesn't have to proceed or specify which of the terms that and when California courts explain or articulate the elements of 10851 they do they'll use the same three elements none of which require a particular theory of liability and as I was saying earlier I think that when we look at you know the way a particular statute or the way a certain factual scenario could arise it could be somebody in a car that's not their own driving that vehicle and or they could be even a passenger of the vehicle and it's completely unclear exactly what they may have may or may not have done to give rise to the 10851 charge itself but the mere fact of being in that car alone is sufficient um but if this court for those reasons we it's clear that under state case law um that that uh 10851 does not create elements it creates means as to the liability term and when we look at the our interpretation which is that you know Mathis tells us that a statute that assigns particular consequences or discrete consequences sentencing consequences to a destructive phrase that is a hallmark of an element and we very clearly do not have that here when we look at 10851 subsection a and then when we look at if those if those two factors aren't don't compel a finding of an element which is right what Mathis requires then this court can look at a peak of the and Vidal is quite instructive on this point and footnote 27 but all says that the record of conviction in 10851 cases are generally um are often more often than not pled to the generic oh actually you've gone past your six minutes you've gone six and a half i recognize that your honor i will um give time to my co-counsel now okay thank you good afternoon good afternoon your honors i will address the merits okay tell us who you are just so that we we can differentiate that on the record Emily Chertoff for for Mr. Lopez your honor okay regardless of how this court comes down on the aggravated felony issue it must still resolve Mr. how can he get asylum in counts how does he get asylum and cancellation and all of those so your honor if this court were to grant remand on the ag fell under either of the theories that we've set forth in the brief that would with nothing else from this court make him eligible purely for cancellation of removal it would not make him eligible for asylum unless this court addresses the particularly serious crime issue and remands on that and even were this court to address the ag fell issue and the particularly serious crime and grant remand on both of those issues withholding and pat are two entirely separate statutory bases for relief and if the court's going to remand on the ag fell and on the particularly serious crime those are also issues the court should remand them because the errors on those issues can't stand why is he barred by the I couldn't tell from the record I mean he's it's been a long time why why does he get to claim asylum now your honor when a person has had a green card and then they lose that green card they are eligible to apply for asylum so the one-year bar would not apply in that situation okay so it's timely I know they didn't contest it but I was trying to figure that out I wasn't sure okay thank you go ahead I want to emphasize three points first the agency ignored Mr. Lopez's sexual orientation in its cat analysis this error is fatal to the agency's cat analysis because the immigration judge failed to follow the coal line of cases Mr. Lopez provided credible and uncontroverted testimony that he is a gay man and that he fears harm if he is returned to El Salvador despite corroborating country conditions evidence the immigration judge ignored this risk of torture in the cat analysis well okay that um I'm trying to you claim that in denying the cat relief the IJ considered only whether he would experience torture due to his mental conditions rather than the aggregate risk of torture compounded by his homosexuality particularly that that if he didn't wind up in a Salvadorian hospital but it looks like the IJ talked about them focused on the mental conditions but um the IJ did discuss the in the other record evidence in assessing his withholding claim the other things that you talked about so hearings are kind of a you know they're they're not just they don't everything fits in a box so it all of the things that you're saying the IJ ignored were didn't as neatly handle it as you would expect so I I'm I'm not sure I agree on that I understand what your honor is saying and I think it's helpful to disaggregate the discussion of the facts and the opinion because this is one of the things that was so complicated and unclear about the immigration judge's decision um withholding and cat are completely separate analyses and you apply a separate standard as the immigration judge so withholding asks just as to the particular social group that our client articulated on the basis of his sexual orientation does he have a 50 percent risk of persecution just on that basis the cat inquiry does not ask that cat asks whether there's more than a 50 percent risk of torture on the basis of every single risk that the person would withholding I completely understand what what judge Callahan is saying about the way that the hearing is conducted but it can't be a sufficient analysis for the cat claim because it's not the same legal standard and the immigration judge should have analyzed the risks all together and then aggregated them to see if they met the 50 threshold so it's your client just I I kind of like to contextually know what's going on at some point your client was detained is your client still detained unfortunately he is your honor and so um and he had been homeless previously since 2006 or something like that or for a long time he's been homeless for several years your honor okay so um it is another factor that the government that the immigration judge did not consider in her cat analysis and that would go to both the sexual orientation and the mental health because they raise his risk of torture for both of those reasons um I see that my time is running short so if the court has no further questions on the cat analysis just to quickly summarize we are also asking for remand on the withholding due to errors of law in fact that we detailed in our brief on that issue and on the particularly serious fine crime crime finding because the immigration judge failed to correctly apply gomez sanchez each of these three errors affected mr lopez's eligibility for relief and they will continue to do so even if this court were to grant remand on the aggravated felony so for that reason we request remand to the bia for resolution of all three of those errors um and report thank you okay thank you i'll we'll reserve the balance for your co-counsel for joseph o'connell on behalf of the attorney general hello your honors hello opposing counsel um i know this is a complicated case and so i will try to be as brief as possible i know there's a lot of issues i'm going to go as fast as i can while allowing for as much time for questions as i can but i know that there's five or six very complicated issues so i'm going to try to try to work through them um so i just have a few points to say about the uh duenas alvarez case and whether or not mathis is clearly irreconcilable um so i just want to really go quickly quickly take a broader view of of the entire case and to see what mathis actually did so first this concept of elements versus means has been around for a really long time um the idea goes back 100 years but then we'll jump to 2007 and so over two dissents in vidal the court held this uh section 10 851 is not categorically a theft offense because it includes accessory after-the-fact so now we know it's broader um then you jump to 2013 and then you have death camps i don't know if i'm saying that that that case name right or not but we call it death camps in this office so in the camps held the modified categorical approach only applies to divisible statutes a divisible statute is one that creates separate crimes with different elements a few months after death camps the court issued duenas alvarez and in duenas alvarez it didn't just do the disjunctive it cited death camps which held that section 10 851 is divisible but what it also did is that it relied on vidal um and then it proceeded the modified categorical approach that's important because vidal did a very deep dive into the state case law on what you need to prove why it's broader than the generic definition of theft and broader than the generic definition of theft because of that intent element in terms of accessory after the act so the next year in 2014 we get the decision in rendon and then rendon relies on death camps and it holds that these statutory alternatives must be found unanimously and not only that rendon said that duenas alvarez is consistent with the approach that it was laying out so rendon cites explicitly duenas alvarez that's footnote 11 after that the ambon court confirmed this rendon approach the next year at almanza arenas and um again i think the court cited duenas alvarez favorably in that case um so then we arrive at masses 2016 um so what we have to do is ask what masses actually did it didn't start from scratch which is why i went through that whole history um using up two and a half minutes of my time what it actually did was resolve a circuit split and it resolved the circuit split in this court's favor and so in doing so the supreme court cited rendon favorably and as noted rendon cited duenas alvarez favorably on two separate occasions the latter of which stating that duenas alvarez is consistent with the elements versus means test so um again we have to keep in mind the posture of this case uh and the only question before the court today on this issue is whether duenas alvarez is clearly irreconcilable with mathis and because math has resolved the circuit split in favor of this court's case law case law that with approval the court should conclude that not only is duenas alvarez not clearly irreconcilable with mathis but if you look at duenas alvarez and the fact that it cited vidal which went did such a deep dive into the state case law i would think that duenas alvarez is consistent with mathis so there's a reason the court has cited to defining precedent on multiple occasions including post mathis um if there's any questions on that i'd be happy to answer them or i can just move to the next one um no i think i think everyone has questions that they're deep philosophical questions and how difficult the issue is they are they really they really are and your honor was right when she said that you know they keep making it making it more complicated when they're trying to simplify it um i'll make this last point about mathis so mathis cites test camps favorably 14 times in the majority opinion and not only that the mathis court cited death camps to refute the dissent argument which which claimed that supreme court prior case law did not intend to distinguish between statutes listing elements versus means the mathis court rejected that contention it quoted death camps and it said all those decisions rested on the premise that the laws contain statutory phrases that cover different crimes and not different methods in other words elements and not means and so that there's this funny little line in mathis um from justice kagan in the majority and so she's talking about this and she says a good rule of thumb for reading our decisions is that what they say what they mean are one and the same um and i think that that is important because you know duenas alvarez cited the elements and mathis mathis basically said look you got to look at the elements to compare to the state crime so the problem here is compounded by the fact that i don't think 108 51 is a very well written statute and and the fact that in california law those that that those of us that have lived that lived it for 20 years either as a judge or a prosecutor or a defense attorney or whatever you know i never saw it the accessory part prosecuted but it's set plainly so what does you know it just isn't right looking at california law on this doesn't totally clear it up and i think some people have argued if you can't really tell from the california law but doesn't the ambiguity and near and near to the petitioner or the defendant or something along those lines i don't i don't think so i would disagree with that um so with that in mind i says that it applies to accessory after the fact but again the second dissent and the doll noted that in the 84 year history um i guess it's now 97 year history um there's never been they haven't found a case that applies it implicitly in in that sense i guess i appreciate your confidence and how you've gone through all this would you uh would you be willing to concede that there might be a but i would concede that but i think a better characterization yes i would concede that yes of course but i think a better characterization of duenas alvarez is not that it's inconsistent but that we would want a more fulsome analysis and i mean you could say that about about any decision um especially especially these these criminal categorical approach modified categorical approach decisions they're so they're so complicated and and yeah you want more you want more analysis you want more state case so you can help another state case that says something um but the fact that it cited the vidal yeah there's some tension but yeah i'd like to see you know i'd like a more fulsome analysis and if we were deciding the issue de novo would it be a more fulsome a little bit different for sure i think so but again the only question for this court is clear irreconcilability and what mattis did was resolve the circuit circuit split in this court's favor which cited rendon which and rendon cited duenas alvarez favorably and so i don't understand how you can suggest that those are now clearly irreconcilable and you reckon irreconcilable because mattis essentially agreed with that that sort of analysis it didn't i think this panel if we so chose and i'm not saying we we haven't even discussed this because we haven't talked about things but we could sue as ponte called this case on bonk ask the court to consider everything and i think that's i can't as a trial attorney um i'm not even allowed to ask for it i believe um uh i don't even know if i could accept it if the court wanted to do it i know it might have to go through the solicitor general's office um i remember my i remember my first moot court for our old assistant director and i asked for something like that and he not breaking character he said you would have to ask your solicitor general about that so yes i'm not disagreeing with that but i couldn't i don't um so anyway my point sorry we have the authority if we choose of course yeah sure yeah call cases to us ponte and ask for and ask the court to to do that we have that i believe so yeah um so i'm going to jump right to the right to the next uh the next issue which is a modified categorical approach and this implicates the last um the last case as well um i was unlucky enough to not have my petitioner concede the second argument but um what we have here uh is conviction documents that establish that mr lopez was convicted as a principal so the charging document alleges that he drove and took someone else's vehicle and he did so with the intent to deprive the owner of his property um the minute order shows that he pled guilty to count one the abstract identifies guilty plead count one the sites are all on the record we cited to him um so by comparison this is where vidal and ariaga pinon are different the defendant pled guilty only to the generalized language of the statute and not to a specific count um here mr lopez pled guilty to driving and taking someone else's vehicle with the intent to deprive a specific person of that property um so count one doesn't match up with anything even remotely resembling after the fact accessory after the fact liability so with that in mind in california to prove accessory after the fact the state has to show and this is under section 32 the state has to show a felony but what the state really at the second element is the state has to show the defendant harbored concealed or aid the principal in that felony with the specific intent the principal avoid or escape arrest trial conviction etc um there's nothing in mr lopez's charging document that even remotely resembles harboring concealing aiding anything like that so our is it it's it's driving or taking it doesn't matter what what really matters is the intent to deprive the combination thereof it's the intent to deprive so this has this case actually has both drive and take it cites the general language of the statute first in all caps and then it goes into lower you want to address the withholding in the cap sure i'll jump right to it um so the um can i call particularly serious crime psc because i have a hard time saying it out loud this is a psc determination um so he's not even eligible okay um so mr lopez is not eligible even to apply for withholding because um because his conviction constitutes a particularly serious crime under the frantescu factors now there's generally no jurisdiction to address that um based on the nature of conviction the circumstances all um so the chair makes his argument saying that uh the immigration judge mischaracterized the record but there's nothing in the record indicating the onset of mr lopez's schizophrenic symptoms the ij noted that she noted that there were bipolar and depression but he had not yet been diagnosed there's no factual finding there's no evidence in the record indicating when mr lopez started experiencing those symptoms the earliest thing we have is uh 2001 why is there a need for formal diagnosis counsel there is no need and there was no finding that there was a need all all the immigration judge did she she noted that he was not yet diagnosed and so the board gave him the benefit of the doubt on on review and said even if he was suffering from schizophrenia even assuming that was that was the case it's still a psc and so and so again the court can't reweight the factors they only have to look to whether or not there's a legal error and so it doesn't matter you're absolutely correct um as to when as to when the onset of his symptoms occurred his conviction or his crime occurred in august 2000 um but we don't know if he was suffering from schizophrenic symptoms and there is no evidence in the record either way so we really don't know and so there was no actual factual finding and so the immigration judge didn't even make an error she just said he wasn't yet diagnosed with schizophrenia and the diagnosis is different from the onset of the symptoms and so there's no error in that and then and then the board's quick cleaned up by saying um even assuming he was it's still a psc and so again there's no uh the court has no jurisdiction to reweigh those factors but but again that shows that there's no there's no legal error and so i would love to move to the cat stuff if it's um because i'm limited on time i've only got a couple minutes left go ahead okay um so uh mr lopez's claim is that the agency failed to consider the evidence in the aggregate and i think that's incorrect so when you look at the argument in petitioner's opening brief i'm sorry if i'm going fast i'm running out of time it refers to the quote-unquote record evidence and it points back up to the statement of facts and when you look at the statement of facts it directs to mr lopez points to this report in the georgetown law center um and the georgetown report says that members of the lgbtq community have been targeted um so i'm not dismissing this evidence but i am saying that it doesn't compel the conclusion that mr lopez will be tortured in el salvador by with the acquiescence of government officials so as for the claim that the agency didn't consider that evidence i would disagree with that as well so this is a 3000 page record the ij devotes an entire paragraph to discussing this georgetown article and i know the court doesn't like the catch-all phrase but when you add the catch-all phrase after considering all this evidence in the record and then you add that to the fact that there was an entire paragraph dedicated to the georgetown article about how lgbtq persons are targeted and when um i think that's enough to say that the that the agency considered this in the aggregate and so uh and the 28 j is cornell there's another important point here um that we made in our response 28 j is that there is this alternative finding and i wish i would have made this point better in our brief but it hasn't even been challenged in the petitioner's opening brief that there's still no on the part of the salvadoran government so that's an alternative finding setting aside the aggregation argument mr lopez has not challenged that um acquiescence finding in any regard and if you look at the language of the agency decision is that the i can read it to you right now i'm gonna highlight it here it says um he has not shown acquiescence uh of content to cause severe pain or suffering in its mental health facilities or otherwise that sort of um suggests that it's it's considering this in the aggregate and again like i know your honors have seen agency decisions where they paid short shrift to to to the analysis or the or the evidence and and and i mean the length and thoroughness of the agency's decisions here um i think indicate that they've considered it um in the aggregate and notwithstanding that um i think that that acquiescence uh determination has not even been challenged and putting aside the aggregation argument you can affirm on that because there was no challenge to that so i know your honors are familiar familiar with the the separate steps to the cat analysis and that cat that was decided in cornell including specific intent and acquiescence and so i think you can deny the petition for if there's any questions i'd be happy to answer it and if there's any either of my colleagues have any additional questions okay um nope there we have no additional questions okay i'm sorry i went so fast it was just there was there's a lot there was a lot to talk about all right well now i could understand you so stay on okay okay i'm here talent has rebuttal two minutes and 29 seconds for rebuttal go ahead okay thank you your honor um so just focusing first on the ag cell issue it's totally it's completely correct that the evolution of the categorical and modified categorical approach has been complicated and long-winded but the issues before this court are not so complicated and it only becomes complicated when we try to reconcile dueñas alvarez with mathis using pre-mathis authority that could not predict and was not approved by the supreme court in mathis i want to be very clear that mathis did not adopt dueñas alvarez's approach to divisibility and it only cited to rendon insofar as it wanted to illustrate the the really distinct circuit split on this precise issue and so what the court has before today is an opportunity to do exactly what chief judge judge thomas recommended in his concurrence which is to take this opportunity and reconcile this issue there is a clear irreconcilability between these two cases and these cases will continue to come before this court if we don't make a decision um and i want to focus really quickly on the modified categorical approach which i did not address earlier and the record here is actually identical to that in vedal and ariag opinion and vedal makes quite clear that the pleading language commonly used is to the generic for 108 51 and that alone is insufficient and that's all we have here we do not have a factual basis for the plea and that's what's required for the if the court proceeds the modified categorical approach and turning very quickly to the merits of the case um when we look at the psc issue that is something that this court reviews de novo and as judge win said the court did not address the schizophrenia the symptoms of schizophrenia and it used the lack of a diagnosis as a basis to just end the analysis there and that was insufficient and the bia's uh reference to and factual findings is separate regulatory error that entitles mr lopez marquine to remand on that basis um and when we look at the cat issue that is also something that this court reviews de novo and um the withholding analysis was not sufficient to satisfy the ij's obligation to aggregate all sources of torture and so what she had to do in that moment was look at every potential source of torture and see whether combined it was more likely than not that mr lopez marquine would suffer torture um and ij did not do that and the bia um and for those reasons we we submit all right thank you both for your arguments in this matter um and this matter will now stand uh stand submitted and this court is in recess until tomorrow at uh one o'clock we thank our colleague because it's seven o'clock her time so they uh and uh well uh thank you counsel and uh we appreciate all your uh prepared arguments thank you your honor thank you this court for this session stands adjourned
judges: Callahan, Nguyen, Kane